IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| REKIESHA BROWN-PERRY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CORECIVIC, INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 3:24-cv-00096<br><br>JUDGE RICHARDSON |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is motion to dismiss (Doc. No. 60, "Motion") filed by Defendants CoreCivic, Inc., CoreCivic of Tennessee,[1] Damon T. Hininger ("Hininger"), Patrick Swindle ("Swindle"), Elaina Rodela ("Dr. Rodela"),[2] and Keith Ivens ("Dr. Ivens") (collectively, "CoreCivic Defendants").[3] Via the Motion, CoreCivic Defendants request that this Court dismiss Plaintiffs' claims pursuant to Rule 12(b)(6) and Rule 25 of the Federal Rules of Civil Procedure. (*Id.* at 1). CoreCivic Defendants filed a memorandum in support of their Motion (Doc. No. 61, "Memorandum"), and Plaintiffs (as identified above and defined below) filed a response to the

[1] Hereinafter, the Court refers to "CoreCivic, Inc." and "CoreCivic of Tennessee" collectively as "CoreCivic."

[2] In their Motion, CoreCivic Defendants informed the Court that Defendant Dr. Rodela's name is spelled incorrectly throughout Plaintiffs' complaint as "Rodella." (Doc. No. 60 at 1 n.1). The correct spelling is "Rodela."

[3] As discussed in greater detail hereafter, Defendants Wayne D. Murray, M.D., Anthony Ramirez, M.D., and Hardin County Medical Center (collectively, "Other Defendants") are also defendants in this action, but they did not join in the Motion.

Motion. (Doc. No. 70, "Response'). CoreCivic Defendants then replied (Doc. No. 71, "Reply") to Plaintiffs' Response.

For the reasons set forth herein, the Motion is **GRANTED**.

PROCEDURAL BACKGROUND

Plaintiffs' claims originally were asserted in a single complaint (filed in this Court under case number 3:22-cv-00571) filed on behalf of multiple plaintiffs. The various claims were based on three different incidents (later called by the Court the Williams Incident, the Allen Incident, and the Brown Incident, respectively). The Williams Incident was the basis for claims asserted by Brenda Williams; the Allen Incident was the basis for claims asserted by Christa Cook and Christa Derick Montgomery, each individually and as survivor and next of kin to Chriteris Allen; and the Brown Incident was the basis for claims asserted by Cameshia Kindred ("Kindred") on behalf of former inmate, and now Decedent, Keith Brown ("Decedent").

The defendants in the original complaint (Doc. No. 1), moved to sever the claims so that each incident would be the subject of a separate lawsuit. (Doc. No. 18, "Motion to Sever"). On July 11, 2023, before the Court ruled on the Motion to Sever, Kindred filed a "Suggestion of Death" (Doc. No. 47, "Suggestion of Death"), which stated that Decedent died on July 11, 2023. On September 28, 2023, the Court granted the Motion to Sever. (Doc. No. 52). In doing so, the Court instructed Kindred to file—in a separate case opened by the Clerk of Court—a complaint limited to the allegations of Kindred's own respective claims (brought on behalf of Decedent). (*Id.*). In response to this, Plaintiffs Justin Brown ("Brown") and Rekiesha Brown-Perry ("Brown-Perry") (collectively, "Plaintiffs"), who are next-of-kin of Decedent, replaced Kindred as named Plaintiffs in the instant lawsuit—which was assigned a new case number (i.e., 3:24-cv-00096, as noted above

in the caption to the instant document)—by filing (on behalf of Decedent) the "Controlling Complaint" at Doc. No. 55.[4]

Defendants Wayne D. Murray, M.D., Anthony Ramirez, M.D., and Hardin County Medical Center (collectively, "Other Defendants"), who did not join in the instant Motion, filed their own motion to dismiss (Doc. No. 62, "Prior Motion") seeking dismissal of Plaintiffs' claims pursuant to Rule 25 of the Federal Rules of Civil Procedure. On August 12, 2024, the Court issued an order (Doc. No. 72, "August 2024 Order") denying the Prior Motion, reasoning:

> Rule 25(a)(1) requires a motion for substitution to be filed within 90 days of the date from which death is suggested. Two steps are required to trigger the running of the 90-day period. "First, the suggestion of death must be made upon the record." *Id.*; *Jenkins v. Macatawa Bank Corp.*, No. 103-CV-321, 2007 WL 737746, at *1 (W.D. Mich. Mar. 7, 2007) (citing *Barlow v. Ground*, 39 F.3d 231, 233 (9th Cir. 1994)). "Second, the suggestion of death must be served upon the other parties *and the deceased's successor* [and i]f the deceased's successor is a non-party, then the suggestion of death must be served in accordance with Rule 4." *Kealohapauole v. Itoe*, No. 21-12237, 2024 WL 969724, at *1 (E.D. Mich. Feb. 12, 2024), *report and recommendation adopted*, No. 21-12237, 2024 WL 966245 (E.D. Mich. Mar. 5, 2024) (quoting *Jones v. Leiter*, 2019 WL 2994499, at *1 (W.D. Mich. July 9, 2019)).
>
> Ms. Kindred filed the Suggestion of Death on July 13, 2023, thus meeting the first requirement necessary to commence the 90-day period within which a motion for substitution must be filed. However, the second requirement necessary to trigger the 90-day period has not been met, because nothing in the record indicates that the Suggestion of Death was served on either Brown or Brown-Perry (i.e., the then-non-party successors of the deceased). (Doc. Nos. 69-2, 69-3). "Thus, the 90-day period for the filing of [a] motion[] for substitution has not commenced." *Jenkins*, 2007 WL 737746, at *1.

---

[4] The complaint at Docket No. 55 ("Complaint") serves as the operative complaint for purposes of this Motion, and any reference herein to any count(s) is a reference to counts asserted in this Complaint.

The reason that the Complaint (i.e., the complaint that originated the case filed under the instant case number (3:24-cv-00096)) had such a high docket entry number (55 rather than 1) is that the entries from case number 3:22-cv-00571 were effectively imported as docket entries in this case and were assigned docket entry numbers based on their date of entry in that case, resulting in 54 docket entry numbers lower than the docket entry number for the Complaint.

(Doc. No. 72 at 2-3). To the extent that CoreCivic Defendants' Motion argues alternatively that dismissal is warranted pursuant to Rule 25(a), (Doc. No. 61 at 22) the Court rejects that argument for the same reasons outlined in its August 2024 Order, which was quoted in large part directly above.

FACTS AS ALLEGED IN THE COMPLAINT[5]

The Decedent was an inmate at Hardin County Correctional Facility ("HCCF").[6] (Doc. No. 55 at ¶ 15). In late 2020 "he began experiencing severe abdominal pain," and on "August 23, 2020, he was transferred to Hardin Medical Center, where Defendant Murray ordered a CT scan." (*Id.*). The medical records show that "Defendant Murray observed a 'tiny cyst' on [Decedent's] liver,

---

[5] The facts contained in this section come from Plaintiffs' Complaint (Doc. No. 55). In this section, the Court will sometimes paraphrase allegations that were made in Plaintiffs' Complaint and other times will directly quote Plaintiffs' Complaint. Where the Court is quoting Plaintiffs' Complaint, that fact is made clear by quotation marks or indented text. Moreover, where the quoted material from Plaintiffs' Complaint itself quotes a document or an individual, or otherwise uses quotation marks, that fact is made clear by quotation marks within the quote.

For purposes of the instant Motion and pursuant to the typical mechanisms of assessing motions under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the facts alleged in the Complaint. But the Court does not accept as true any legal conclusions (even if couched as facts). As for any representation in the Complaint that the Court is *not* accepting as true, the Court generally identifies it by qualifying it (as, for example, by "Plaintiffs allege") to denote that it is not being taken as true but rather is set forth to indicate what Plaintiffs *claim* to be true. Throughout this Order, except as indicated in the next sentence, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even with the awareness that any such alleged fact may ultimately prove false. Having said that, at times when assessing whether Plaintiffs have alleged factual matter sufficient to support their respective claims, the Court does point that it is basing its assessment on the facts alleged in the Complaint; in that particular context, the Court does use the phrase "Plaintiffs allege" to precede the facts alleged, even though the Court is taking those facts as true for purposes of the Motion.

[6] In their Memorandum, CoreCivic Defendants assert that there is "no prison known as 'Hardin County Correctional Facility.'" (Doc. No. 61 at 2 n.1). CoreCivic Defendants presume that Plaintiffs instead meant to refer to the South Central Correctional Facility ("SCCF"). (*Id.*). Notably, Plaintiffs did not address this assertion in their Response. Because disposition of the Motion does not turn on the name of the facility in question, and further because CoreCivic Defendants indicate that—for purposes of the Motion—they "will pretend the fictitious prison exists" (*id.*), the Court declines to dedicate any resources to ascertaining which prison name is accurate. For purposes of the ruling on the Motion, the Court will continue to use the name "Hardin County Correctional Facility" and/or "HCCF" to refer to the prison where Decedent was an inmate, with the understanding that that name may ultimately prove to be incorrect.

but he did not evaluate the 'cyst' further." (*Id.*). Plaintiffs allege that if Defendant Murray had evaluated the cyst that "he would have discovered a cancerous lesion." (*Id.*).

On February 6, 2021, as a result of "severe, ongoing abdominal pain," Decedent was again sent to Hardin Medical Center. (*Id.* at ¶ 16). "Defendant Ramirez ordered an X-ray and blood tests, and Dr. Benjamin Wilkerson (a radiologist) and Defendant Ramirez interpreted the X-ray results." (*Id.*). Dr. Benjamin Wilkerson and Defendant Ramirez interpreted the X-ray results, and "both physicians found nothing abnormal in the X-rays, and Defendant Ramirez diagnosed [Decedent] with stomach ulcers caused by an H. Pylori infection." (*Id.*). Defendant Ramirez had access to Decedent's medical records, which (as discussed above) indicated that Decedent "had been suffering from abdominal pain for months" and that Decedent "had a 'cyst' on his liver." (*Id.*).

"In the months that followed, [Decedent] continued to suffer from the same symptoms that he first reported in late 2020." (*Id.* at ¶ 17). More specifically, Decedent "observed blood in his stool, and he began losing weight." (*Id.*). Dr. Rodela ordered additional blood tests and—based on the results of those additional blood tests—"insisted that [Decedent] was still suffering from the H. Pylori infection." (*Id.*). "Dr. Rode[]la never ordered a CAT scan []or any other form of imaging scan or further diagnostic testing." (*Id.* at ¶ 18). Plaintiffs allege that "Defendant Rode[]la has a history of deliberate indifference toward the inmates in CoreCivic's facilities." (*Id.* at ¶ 19 (citations omitted)).

On October 12, 2021, Decedent "passed out from the increasing pain in his abdomen," and "[a]t Defendant Rode[]la's direction, CoreCivic medical staff gave him pain medication and sent him back to his cell." (*Id.* at ¶ 21). On October 16, 2021, Decedent passed out again and "at Defendant Rode[]la's direction he was kept in CoreCivic's medical ward all day despite the fact that he was vomiting almost constantly." (*Id.*). Decedent was eventually "sent back to Hardin

Medical Center, where a CAT scan revealed a large mass in his abdomen." (*Id.*). That same day Decedent was transferred to Jackson-Madison County General Hospital and "was sent into emergency surgery where his doctors discovered a large cancerous mass in his colon." (*Id.* at ¶ 22). After the surgery, Decedent "was diagnosed with terminal Stage 4 colon cancer." (*Id.*).

Plaintiffs allege that "[g]iven the seriousness of [Decedent's] medical condition, [that] he should have been sent directly to the Tennessee Department of Correction's ('TDOC') Lois M. DeBerry Special Needs Facility, which is designed to house inmates with complex medical problems." (*Id.* at ¶ 23). Instead, Decedent was sent back to HCCF, which allegedly was understaffed and did not provide the level of care required. (*Id.*). On November 17, 2021, Decedent was transferred to Lois M. DeBerry, (*id.*), and on July 11, 2023, Decedent "died from cancer" (*id.* at ¶ 25). Plaintiffs allege that there were needless delays in treating Decedent that caused the cancer to progress "to the point where it became terminal." (*Id.* at ¶ 24).

Plaintiffs assert that the supervisory CoreCivic Defendants, including CoreCivic CEO Damon Hininger and COO Patrick Swindle, were aware of longstanding and systemic issues with understaffing and inadequate medical care throughout CoreCivic facilities, but failed to implement corrective measures. (*Id.* at ¶¶ 47-48). Plaintiffs also assert that Defendant CoreCivic operates under unconstitutional customs or policies that prioritize profits over inmate health and safety, contributing directly to Decedent's death. (*Id.* at ¶¶ 26-49). In support, Plaintiff references various lawsuits, audits, and a shareholder derivative action alleging widespread corporate misconduct and indifference to inmate welfare. (*Id.*).

Based on these allegations, Plaintiffs bring claims in four different counts. In Count One, Plaintiffs bring claims against the CoreCivic Defendants[7] under § 1983 based on their alleged

[7] The Complaint purports to indicate that Count One is being brought against both the CoreCivic Defendants and an individual/entity defendant named "Medlin." (Doc. No. 55 at ¶ 51). Paragraphs 55 and 57 similarly

deliberate indifference to the health and safety of Decedent in violation of his rights under the Eighth Amendment. And in Counts Two, Three, and Four, Plaintiffs bring claims against certain defendants[8] under state law based on alleged medical malpractice, gross negligence and negligence, respectively.

## LEGAL STANDARD

For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual

---

purport to indicate that Counts Three and Four, respectively, were also bring brought against an individual/entity defendant named "Medlin." (*Id.* at ¶¶ 55, 57). Notably, before the case was severed, an individual named "Jason Medlin" was a defendant. (Doc. No. 1 at ¶ 12). But in the present case (i.e., the one being prosecuted by the Complaint in the above-captioned case), the Court discerns that Plaintiffs were not intending to bring their claims against "Medlin" (whether that be Jason Medlin or someone/something else altogether) both because the case caption does include an individual/entity defendant named "Medlin" and because the section of the Complaint listing the parties does not mention a defendant "Medlin." The Court will proceed with its analysis accordingly.

[8] More specifically Plaintiffs bring Count Two (i.e., medical malpractice) against Defendants CoreCivic, Dr. Rodela, Dr. Ivens, Hardin Medical Center, Wayne D. Murray, and Anthony Ramirez (Doc. No. 55 at ¶ 53); Count Three (i.e., gross negligence) against Defendants CoreCivic, Hininger, and Swindle (*id.* at ¶ 55); and Count Four (i.e., negligence) against Defendants CoreCivic, Hininger, and Swindle (*id.* at ¶ 57).

Notably, the Complaint purports to indicate that the claims in Count Three and Count Four were also being brought against an individual/entity defendant named "Medlin," but for the reasons discussed in the footnote immediately preceding this footnote, the Court discerns that Plaintiffs did not intend to bring those claims against an individual/entity defendant named "Medlin."

allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010), *cited in Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018). Moreover, factual allegations that are merely *consistent* with the defendants' liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Federal Rule of Civil Procedure 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

## ANALYSIS

CoreCivic Defendants move under Rule 12(b)(6)[9] to dismiss the Complaint, asserting that Plaintiffs fail to allege sufficient factual content to state a claim for relief under 42 U.S.C. § 1983. The gravamen of Plaintiffs' claims (which are brought on behalf of Decedent) is that CoreCivic Defendants were deliberately indifferent to the serious medical needs of Decedent, who (as noted above) died on July 11, 2023. Plaintiffs seek to impose liability on CoreCivic under a so-called

[9] Although CoreCivic Defendants also argued for dismissal pursuant to Rule 25, the Court rejects that argument for the reasons discussed above.

*Monell* theory and on various individual and supervisory defendants in their respective personal capacities.

A § 1983 plaintiff must plead both (1) the deprivation of a right secured by the Constitution or federal law, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014) (citation omitted). In the context of claims under the Eighth Amendment for failure to provide medical care or protect an inmate, a plaintiff must plausibly allege that (1) the inmate faced an objectively serious risk of harm, and (2) the defendant had a sufficiently culpable state of mind—i.e., that the official subjectively knew of the risk and consciously disregarded it. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994). Additionally, supervisory liability under § 1983 cannot be based on respondeat superior. *Cf Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). Each individual defendant must be personally involved in the alleged constitutional deprivation. *Id.*

For the reasons explained below, the Court finds that Plaintiffs' allegations, though tragic, do not satisfy the governing pleading standards. The Complaint fails to allege facts plausibly suggesting, as required to state a claim of deliberate indifference, that Defendants Hininger, Swindle, or Dr. Ivens had actual, specific knowledge of a serious medical risk to Decedent and consciously disregarded that risk. Moreover, Plaintiffs do not allege sufficient facts to plausibly suggest that the manner in which Dr. Rodela treated Decedent amounted to deliberate indifference. Finally, Plaintiffs do not allege sufficient facts to plausibly suggest that CoreCivic maintained an unconstitutional policy or custom that was the moving force behind any deprivation of rights, as required to state a valid *Monell* claim against CoreCivic even if Plaintiffs had adequately alleged conscious indifference on the part of *someone*. Accordingly, the Motion hereby will be granted in its entirety.

## I. Plaintiffs Fail to Plausibly Plead Individual Liability.

Plaintiffs attempt to impose liability on various supervisory and operational officials, including CoreCivic executives (Hininger and Swindle) and medical personnel (Dr. Rodela and Dr. Ivens). However, Plaintiffs fail to plead the necessary factual content to support a claim of deliberate indifference against any of these individuals.

In *Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679 (6th Cir. 2024), the Sixth Circuit emphasized that general allegations about systemic issues or inadequate staffing are not enough to state a claim against a defendant absent facts showing that the defendant drew the inference of a substantial risk to a particular inmate and consciously disregarded that risk. *Id.* at 685. The court also rejected claims based on inferential references to corporate leadership or health services administration, as too vague to meet *Iqbal*'s specificity requirement. *Id.* at 686.

That reasoning applies with full force here. Plaintiffs attempt to impose supervisory liability against CEO Damon Hininger, COO Patrick Swindle, and Medical Director Keith Ivens, based on generalized references to prior lawsuits, settlements, and audit findings about conditions at CoreCivic facilities nationwide. But in *Caraway*, the Sixth Circuit held that such allegations do not suffice to state a claim for individual liability, absent specific facts linking the supervisory official's knowledge to the particular constitutional violation. As in *Caraway*, Plaintiff fails to allege that Hininger, Swindle, or Dr. Ivens[10] were aware of Decedent's health concerns or played any role in the events that allegedly resulted in his death.

The claim against Dr. Rodela fares no better. Plaintiffs claim that Dr. Rodela was deliberately indifferent to the health and safety of Decedent by virtue of the method of treatment employed by Dr. Rodela. (Doc. No. 55 at ¶ 51). "The Eighth Amendment forbids prison officials

---

[10] Although the Complaint alleges that Dr. Rodela had knowledge of Decedent's condition and was involved in treatment decisions, it does not allege likewise as to Dr. Ivens.

from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)). *Accord Murray v. Dep't of Corr.*, 29 F.4th 779, 786 (6th Cir. 2022) ("A government official violates an incarcerated person's Eighth Amendment rights when the official shows 'deliberate indifference to serious medical needs.'" (quoting *Estelle*, 429 U.S. at 104)). "A constitutional claim for denial of medical care has objective and subjective components." *Blackmore*, 390 F.3d at 895 (citations omitted). The Sixth Circuit recently elaborated on the distinction between the two components, stating as follows:

> The objective component requires a plaintiff to allege a "sufficiently serious" deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). When a physician diagnoses a medical need mandating treatment, "the plaintiff can establish the objective component by showing that the prison failed to provide treatment." *Rhinehart*, 894 F.3d at 737. But when a prisoner receives ongoing treatment and alleges that the treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. (quoting *Miller v. Calhoun County*, 408 F.3d 803, 819 (6th Cir. 2005)). The subjective component, on the other hand, requires the plaintiff to show that the defendant knew that he faced "a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

*Margosian v. Martinson*, No. 25-1359, 2025 WL 4692963, at *3 (6th Cir. Dec. 23, 2025).

The Sixth Circuit has explained that in evaluating a deliberate-indifference claim, courts must "distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)). This is because "where the plaintiff has received some medical treatment, federal courts are generally reluctant to second guess medical judgments and

to constitutionalize claims which sound in state tort law." *Griffith v. Franklin Cnty., Kentucky*, 975 F.3d 554, 568 (6th Cir. 2020) (internal citations and quotations omitted). The Sixth Circuit has expanded upon this reluctance, stating:

> Ordinary individuals outside a prison's walls and inmates within those walls both face a risk that their doctors will perform incompetently. That is why the states have adopted a well-established body of tort law to remedy the harms caused by medical malpractice. But mere malpractice does not violate the Eighth Amendment. *See Estelle*, 429 U.S. at 106. Only grossly or woefully inadequate care—not just care that falls below a professional standard—can be called "cruel and unusual." *See Rhinehart*, 894 F.3d at 737; *Jones v. Muskegon County*, 625 F.3d 935, 945-46 (6th Cir. 2010); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *Hixson v. Moran*, 1 F.4th 297, 303 (4th Cir. 2021); *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020). This test avoids turning the Eighth Amendment into a federal malpractice statute. *Cf. Burgess*, 735 F.3d at 476.

*Phillips v. Tangilag*, 14 F.4th 524, 535 (6th Cir. 2021). Therefore, although it is possible to succeed on a deliberate-indifference claim that challenges the adequacy of treatment provided, it is a high bar, requiring the plaintiff to show that the treatment that was provided was "so grossly incompetent or so grossly inadequate as to shock the conscience or be intolerable to fundamental fairness." *Id.* (internal citations and quotations omitted). *Accord Thompson v. Kline*, No. 4:16cv1926, 2017 WL 1166128, at *2 (N.D. Ohio Mar. 29, 2017) ("A physician's treatment plan will only rise to the level of a constitutional violation if it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' That is a very high standard to meet." (quoting *Terrance v. Northville Regional Psychiatric Hosp.*, 286 F.3d 834, 844 (6th Cir. 2002)); *Rhinehart v. Scutt*, 894 F.3d 721, 738-739 (6th Cir. 2018) ("That is not to say that a doctor is immune from a deliberate-indifference claim simply because he provided some treatment for the inmates' medical needs. But there is a high bar that a plaintiff must clear to prove an Eighth Amendment medical-needs claim: The doctor must have *consciously* expos[ed] the patient to an *excessive* risk of *serious* harm." (citation and internal quotation marks omitted)).

Here, Decedent was provided care, and so, as CoreCivic Defendants aptly put it in their Memorandum, "Plaintiffs' allegations against Dr. Rodela amount to a disagreement over his treatment[.]" (Doc. No. 61 at 14). As discussed above, "when a prisoner receives ongoing treatment and alleges that the treatment was inadequate, the objective component of an Eighth Amendment claim requires a showing of care so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Margosian*, 2025 WL 4692963, at *3 (internal citations and quotations omitted). The Court finds that the allegations made in Plaintiffs' Complaint do not meet this high bar. Notably, according to the Complaint, Dr. Rodela's involvement with Decedent's treatment did not begin until after Decedent had been sent twice to Hardin Medical Center, where he was observed by Defendant Murray and Defendant Ramirez. (*See* Doc. No. 55 at ¶¶ 15-17). During those two trips, Dr. Murray ordered a CT scan, which showed a "tiny cist" on Decedent's liver, (*id.* at ¶ 15), and Defendant Ramirez ordered an X-ray, which revealed nothing abnormal, and blood tests, which led Defendant Ramirez to diagnose Decedent with "stomach ulcers caused by an H. Pylori infection," (*id.* at ¶ 16). According to Plaintiffs' allegations, it is only after the two aforementioned trips to the Hardin Medical Center that Dr. Rodela became involved with Decedent's medical treatment. (*Id.* at ¶ 17).

Plaintiffs allege that in the months that followed, Decedent observed blood in his stool and began to lose weight, which led Dr. Rodela to order additional blood tests. (*Id.*). Based on the results from the blood tests, Dr. Rodela "insisted that [Decedent] was still suffering from the H. Pylori infection," (*id.*), and did not order any "a CAT scan nor any other form of imaging scan or further diagnostic testing." (*Id.* at ¶ 18). Plaintiffs assert that Dr. Rodela should have done further diagnostic testing and that if she had, "[Decedent's] cancer would have been discovered and it could have been treated." (*Id.* at ¶ 24).

Then, on October 12, 2021, after Decedent "passed out from the increasing pain in his abdomen," Dr. Rodela ordered the CoreCivic medical staff to give Decedent pain medication and send him back to his cell. (*Id.* at ¶ 21). On October 16, 2021, after Decedent passed out again, Dr. Rodela ordered that Decedent be sent to the medical ward, where Decedent was observed. (*Id.*). While there, Decedent "was vomiting almost constantly." (*Id.*). Decedent was eventually "sent back to Hardin Medical Center, where a CAT scan revealed a large mass in his abdomen." (*Id.*). That same day, Decedent "was transferred to Jackson-Madison County General Hospital" and there "sent into emergency surgery[,] where his doctors discovered a large cancerous mass in his colon," which led to Decedent being "diagnosed with terminal Stage 4 colon cancer." (*Id.* at ¶ 22). Thereafter, Decedent was sent back to HCCF before eventually being transferred to the Lois M. DeBerry Special Needs Facility on November 17, 2021. (*Id.* at ¶ 23). Plaintiffs assert that Decedent should have been sent directly to Lois M. DeBerry Special Needs Facility, "[g]iven the seriousness of [Decedent's] medical condition." (*Id.*).

Even viewing the complaint in the light most favorable to Plaintiffs, the Court finds that the factual allegations in the complaint do not plausibly suggest that the treatment provided by Dr. Rodela was "so grossly incompetent or so grossly inadequate as to shock the conscience or be intolerable to fundamental fairness." *Phillips*, 14 F.4th at 535 (internal citations and quotations omitted). Plaintiffs' challenges relate to decisions about the forms of treatment provided and the failure to use specific diagnostic techniques. But as the Supreme Court has noted:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court[.]

*Estelle*, 429 U.S. at 107. *Accord Criswell v. Chambers-Smith*, No. 3:22-cv-1784, 2024 WL 197263, at *3 (N.D. Ohio Jan. 18, 2024) (granting a motion to dismiss as to the plaintiff's deliberate-indifference claim, finding that "decisions about whether 'additional diagnostic techniques or forms of treatment' are appropriate 'is a classic example of a matter for medical judgment' and at most constitute 'medical malpractice.'" (quoting *Estelle*, 429 U.S. at 107)). Therefore, the Court finds that the care provided by Dr. Rodela "does not represent cruel and unusual punishment," but instead "[a]t most . . . is medical malpractice [.]" *Estelle*, 429 U.S. at 107.

In sum, the Court finds that Plaintiffs did not allege facts plausibly suggesting entitlement to relief on a claim of deliberate indifference against the individual CoreCivic Defendants (i.e., Hininger, Swindle, Dr. Rodela, and Dr. Ivens). Thus, the Motion will be granted with respect to the § 1983 deliberate-indifference claims brought against those individuals.

### II. Plaintiffs Fail to Plausibly Allege *Monell* Liability on the Part of CoreCivic.

The *Monell* theory of liability originated in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Under the *Monell* theory, a municipal entity can be held liable under § 1983 only if the plaintiff shows that the entity maintained a policy, custom, or practice that was the moving force behind a constitutional violation. And "[a]lthough it is a private company, there is no question that CoreCivic is a state actor for purposes of Section 1983 because it performs the traditional state function of operating a prison." *Jefferson v. Core Civic* [sic], No. 3:21-CV-00776, 2022 WL 1073331, at *2 (M.D. Tenn. Apr. 8, 2022) (citing *Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)).[11] "The standards for assessing municipal liability are applied to claims against private corporations that operate prisons."[12] *Id.* (citation omitted). A "plaintiff asserting a section

[11] CoreCivic was formerly known as Corrections Corporation of America.

[12] The Court notes that in *Jefferson*, the court did not yet have the benefit of *Caraway* to fully define the standards applicable to a complaint like the one in *Jefferson* (which is similar to the operative complaint in

1983 claim on the basis of a municipal custom or policy must 'identify the policy [or custom], connect the policy [or custom] to the [County] itself[,] and show that the particular injury was incurred because of the execution of that policy [or custom]." *Graham ex rel. Est. of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004) (second alteration in original) (quoting *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

Here, Plaintiffs allege that CoreCivic maintained customs of inadequate medical care, understaffing, and lax security, pointing to other lawsuits and settlements—including a shareholder derivative action that CoreCivic settled in 2021. But these allegations neither identify a specific policy or practice, nor plausibly show how such a policy caused the deprivation of Decedent's rights in particular.

In short, Plaintiffs' *Monell* theory fails for the same reason articulated by the Sixth Circuit in *Caraway*, where the court emphasized that the plaintiff must identify "an unconstitutional policy and not simply an undesirable or negligent one." *Caraway*, 2024 WL 1546522, at *6. Because Plaintiffs have not done so, dismissal of their *Monell* claim is warranted.

### III. The Court Declines to Exercise Supplemental Jurisdiction over the State-Law Claims

Plaintiffs also assert several state law claims against some of the CoreCivic Defendants and the Other Defendants. A district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3); *see also Ford v. Frame*, 3 F. App'x 316, 318 (6th Cir. 2001) ("[D]istrict courts possess broad discretion in determining whether to retain supplemental jurisdiction over state claims once all federal claims are dismissed."). The Supreme Court has noted that "in the usual case in which all federal-law

---

the present case). Moreover, whatever standards were applied in *Jefferson* were applied with relative leniency towards the plaintiff because the case there was at the very early stage of mere initial screening pursuant to the Prison Litigation Reform Act and not before the court on a motion to dismiss.

claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("[A] federal court that has dismissed a plaintiff's federal-law claims should not ordinarily reach the plaintiff's state-law claims.").

The Court finds that the aforementioned factors weigh in favor of the Court declining (supplemental) jurisdiction over Plaintiffs' state-law claims after having granted CoreCivic Defendants' Motion with respect to Plaintiffs' federal claims[13] (over which the Court has original jurisdiction). Instead, the Court dismisses the state-law claims without prejudice. Plaintiffs may seek to refile those claims in a Tennessee state court, although the Court expresses no opinion about how they might fare in state court.

CONCLUSION

For the reasons set forth above, the Court **GRANTS** CoreCivic Defendants' Motion to dismiss (Doc. No. 60) in its entirety.

The Clerk is **DIRECTED** to enter judgment under Rule 58 of the Federal Rules of Civil Procedure and close the file.

IT IS SO ORDERED.

Eli Richardson
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

[13] Plaintiffs argue that if (as has turned out to be the case, as discussed above) the Court does not grant the Motion specifically pursuant to CoreCivic Defendants' Rule 25(a) argument, then the state law claims against the Other Defendants would still remain in federal court and that "it makes no sense to send some of the Defendants to state court while keeping others in federal court." (Doc. No. 70 at 9). But importantly, and as CoreCivic Defendants correctly point out in their Reply, "Plaintiffs only bring *state law* claims against the [Other D]efendants, so Plaintiffs' claims against [the Other Defendants] would *not* remain in federal court should this Court decline supplemental jurisdiction." (Doc. No. 71 at 6) (emphasis added).